

THREE GATEWAY CENTER
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1101
lwalsh@walsh.law

April 5, 2023

**VIA ECF**
Hon. Leda Dunn Wettre, U.S.M.J.
United States District Court for the District of New Jersey
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

Re: *Soulful Nutrition Inc. d/b/a Remedy Organics v. Remedy Drinks Pty., Ltd., et al.,* Civil Action No. 2:21-cv-17455 (ES/LDW)

Dear Judge Wettre:

This firm, together with Gibson, Dunn & Crutcher LLP, represents defendants Remedy Drinks Pty., Ltd. ("Remedy Drinks Australia") and Remedy Drinks USA, LLC ("Remedy Drinsk US") (Remedy Drinks Australia and Remedy Drinks US together, "Remedy Drinks"). We write, pursuant to the Court's order of January 9, 2023 (Dkt. 79) to provide a status update in advance of the telephonic status conference scheduled for April 12, 2023.

Soulful Nutrition, Inc. ("Soulful") has inflated the scope of discovery in this litigation—and the burden on Remedy Drinks—vastly out of proportion to the scale of the dispute. To date, the parties have together reviewed almost 70,000 documents. Remedy Drinks has produced more than 48,000 pages (after searching for and reviewing hundreds of thousands of pages collected using the overbroad search terms that Soulful insisted on using to find documents responsive to Soulful's **142** separate requests for production). And Soulful has itself produced more than 68,000 pages. Soulful's productions, however, include an immense quantity of wholly irrelevant documents that were apparently produced in shotgun fashion, simply to make it more burdensome for Remedy Drinks to review them. Remedy Drinks alone was required to devote more than 10 attorneys from this firm and Gibson Dunn to document review, in addition to engaging a team of contract reviewers. Soulful has served a separate 30(b)(6) notice on each of Remedy Drinks Australia and Remedy Drinks US, each notice containing **at least 57** topics for examination. Soulful has insisted that Remedy Drinks Australia and Remedy Drinks US—***each***—designate a separate witness to testify **on each topic**, even where it is self-evident that one company or the other has no relevant knowledge on that topic.

Despite these massive efforts—and although Soulful's and Remedy Drinks' products have coexisted in the US market for years and each has sold millions of units in the United States—Soulful still has failed to identify even a <u>***single***</u> instance in which a consumer has ever bought the wrong product based on alleged confusion between the parties' marks. Indeed, although Remedy Drinks has already deposed two of Soulful's party witnesses, including Soulful's co-founder Cindy Kasindorf, neither witness was able to identify a single mistaken purchase a consumer has ever made. In an effort to salvage its case, Soulful has pointed to several events which it claims represent confusion among third-party business partners of the parties like retailers, distributors,

Hon. Leda Dunn Wettre, U.S.M.J.
April 5, 2023
Page 2

and shipping companies. Remedy Drinks has already gone to the trouble and expense of deposing multiple of the third parties Soulful has identified. Those depositions have shown Soulful's evidence on this score also fails. Some events Soulful identified were merely fleeting instances involving questions that were quickly answered. Other events—including events Soulful relied on at the start of this litigation in sworn declarations in support of its application for a TRO—**_never even occurred at all_**.

Left without evidence, Soulful has continued working to inflate the scope of discovery, either to inflict punishment on Remedy Drinks, in a fishing expedition to find something to support its claims, or both. Soulful's increasingly excessive and abusive discovery demands on Remedy Drinks and non-parties alike have crossed the line, far exceeding the discovery that is "proportional to the needs of the case," Fed. R. Civ. P. 26(b), and undermining the "just, speedy, and inexpensive determination" of this lawsuit, Fed. R. Civ. P. 1. Remedy Drinks seeks the Court's assistance in getting discovery back under control and preventing further discovery abuses. *See, e.g.*, 28 U.S.C. § 1927.

**Issue #1: Overbroad 30(b)(6) Deposition Topics**

Soulful has served separate 30(b)(6) notices on each of Remedy Drinks US and Remedy Drinks Australia, noticing *57* and *58* topics for examination respectively, as set out in the table below.

|     | Topic |
| --- | --- |
| 1. | Plaintiff, Plaintiff's use of Plaintiff's Mark, and Plaintiff's Goods and Services |
| 2. | The facts and circumstances concerning the creation, selection, development, and adoption of any Accused Mark. |
| 3. | The facts and circumstances concerning the decision to use any Accused Mark or any similar mark in the United States in connection with Defendants' Goods and Services including all other marks or names considered by Defendants for use in the United States and the reasons for choosing any Accused Mark over alternative marks. |
| 4. | The facts and circumstances concerning any applications to register or registrations for any Accused Mark, including but not limited to Application Serial Nos. 97371695; 97284293; 97284291; 97284290; 88205070; 88205082; 88706986; 88205063; 79353696; 79347280; 79290749; 79353976 or any similar mark with the United States Patent and Trademark Office. |
| 5. | Any existing or future plans to apply for registration of any Accused Mark or any similar mark with the United States Patent and Trademark Office. |
| 6. | Any commercial impression, significance or meaning intended by any Accused Mark. |
| 7. | Any past, existing, or future plans to challenge any mark containing the word "Remedy" in the United States. |
| 8. | The facts and circumstances of any objection or challenge by a third party to Your use of any Accused Mark. |
| 9. | The facts and circumstances concerning Your first use of any Accused Mark in the United States, including but not limited to use in United States Commerce as that term is defined in Section 45 of the Lanham Act. |
| 10. | Identification and description of all versions of any Accused Mark or any similar mark that You have used in U.S. Commerce. |

Hon. Leda Dunn Wettre, U.S.M.J.
April 5, 2023
Page 3

|     | **Topic** |
| --- | --- |
| 11. | Each of the goods and services that You, or anyone on Your behalf, have advertised, promoted, distributed, offered, provided, or sold in connection with any Accused Mark and any planned future products. |
| 12. | All forms and manners of appearance in which Defendants have depicted, displayed, and/or used or intends to depict, display, and/or use any Accused Mark in connection with each of Defendants' Goods and Services in the United States, including but not limited to all designs, logos, and stylizations. |
| 13. | The functions or uses of the goods and services offered under any Accused Mark in the United States. |
| 14. | The past, current and future marketing, advertising and promotion of goods and services offered, provided, or sold in connection with any Accused Mark in the United States. |
| 15. | Any efforts You have made to market Defendants' Goods and Services to consumers who have purchased or who are likely to purchase Plaintiff's Goods and Services. |
| 16. | Your use of keywords and other search engine optimization techniques involving the word REMEDY. |
| 17. | Your use of hashtags and tags on social media platforms for promotion and advertising. |
| 18. | Plans You have to expand the goods and services offered by You, or by anyone on Your behalf, under any Accused Mark in the United States. |
| 19. | Plans You have to alter or supplement the appearance of any Accused Mark. |
| 20. | The facts and circumstances concerning the decision to change Your domain name from <remedydrinks.com> to <remedybrands.com> and any corresponding changes in social media and other marketing materials. |
| 21. | The geographic areas where You, or anyone on Your behalf, have advertised, promoted, distributed, offered, provided, or sold goods or services in connection with any Accused Mark in the United States. |
| 22. | Plans You have to expand the geographic areas where You advertise, promote, distribute, offer, provide, or sell goods or services in connection with any Accused Mark in the United States. |
| 23. | Plans You have to use any Accused Mark in connection with wellness shots or other products similar in size or format to the "Remedy Shots" Remedy Drinks sells in Australia in the United States. |
| 24. | The channels of trade and retailers through which You, or anyone on Your behalf, have advertised, promoted, distributed, offered, provided, or sold goods or services in connection with any Accused Mark in the United States. |
| 25. | The consumers to whom You, or anyone on Your behalf, have advertised, promoted, distributed, offered, provided, and sold goods and services in connection with any Accused Mark. |
| 26. | The characteristics or demographic makeup of the typical or target consumer for Defendants' Goods and Services in the United States. |
| 27. | The sophistication of the consumers referred to in Topics 25-26. |
| 28. | The past, current and future sale and distribution of Defendants' Goods and Services in the United States, including but not limited to the actual and intended and channels of trade for each of Defendants' Goods and Services. |
| 29. | Your knowledge of Defendants' Goods and Services being offered next to, near or in the same store as Plaintiff's Goods and Services. |
| 30. | The facts and circumstances concerning any complaints received by Defendants relating to Defendants' Goods and Services. |

Hon. Leda Dunn Wettre, U.S.M.J.
April 5, 2023
Page 4

|     | **Topic** |
| --- | --- |
| 31. | The facts and circumstances concerning any objections to Defendants' use or registration of any Accused Mark, including but not limited to any Trademark Trial and Appeal Board proceedings and any resolutions to such objections. |
| 32. | The facts and circumstances concerning any efforts by Defendants to enforce any Accused Mark. |
| 33. | The facts and circumstances concerning any communication received from any third party concerning Plaintiff or Plaintiff's Goods and Services. |
| 34. | The facts and circumstances concerning any communication received from any third party concerning whether there is any relationship between, on the one hand, Plaintiff or Plaintiff's Goods and Services and, on the other hand, Defendants or Defendants' Goods and Services. |
| 35. | The facts and circumstances concerning known instances of mistake or false association between Plaintiff and Defendants or Plaintiff's Goods and Services and Defendants' Goods and Services, including incorrect application of social media tags or mentions, misdirected mail, email, inquiries, in person visits or approaches, telephone calls, meeting requests or other communications intended for Plaintiff but received by You or vice versa. |
| 36. | The facts and circumstances concerning any instances of potential confusion or mistake (regardless of whether You contend that such instances amount to actual confusion) as to (i) the source, sponsorship or affiliation of Defendants' Goods and Services, (ii) the source, sponsorship, or affiliation of Plaintiff's Goods and Services, (iii) the relationship between Plaintiff and any Defendant; or (iv) the relationship between Plaintiff's Goods and Services and Defendants' Goods and Services. |
| 37. | The facts and circumstances concerning any trademark search reports, formal or informal trademark searching, market studies, market research, or surveys conducted by You or on Your behalf concerning any Accused Mark, Plaintiff's Mark, or Plaintiff. |
| 38. | Third parties of which you are aware that use or have used a name or mark incorporating the term "Remedy" in the United States in connection with the sale of beverage products, including but not limited to the manner and extent of their use of the marks, their sales, market share, and consumer awareness and perception of the marks. |
| 39. | Your first knowledge or awareness of (i) Plaintiff, (ii) Plaintiff's Mark, and (iii) any goods or services in connection with any of Plaintiff's Mark. |
| 40. | Communications between any Defendant and Plaintiff or any of Plaintiff's employees, shareholders or board members. |
| 41. | Non-privileged communications about (i) Plaintiff, (ii) Plaintiff's Mark, (iii) Plaintiff's Goods and Services, or (iv) any of Plaintiff's employees, shareholders or board members. |
| 42. | Non-privileged communications concerning this litigation. |
| 43. | Your sales and profits from sales of goods and services sold or provided in connection with any Accused Mark, including but not limited to any item You claim as a cost or deduction and how You calculate profits. |
| 44. | Your advertising and marketing expenditures in the United States in connection with any Accused Mark. |
| 45. | The costs and efforts that would be required of You to rebrand Defendants' Goods and Services in the United States. |
| 46. | Agreements between You and any third party concerning any Accused Mark. |

Hon. Leda Dunn Wettre, U.S.M.J.
April 5, 2023
Page 5

|          | **Topic** |
|----------|-----------|
| **47.**  | Intra-company agreements or agreements with affiliates concerning any Accused Mark. |
| **48.**  | The facts and circumstances that form, in whole or in part, the basis for your allegation in your answer filed in this litigation that You launched Your web presence and several social media accounts with a U.S. following in 2013. |
| **49.**  | The facts and circumstances of Your presence at KombuchaKon in 2014 to 2018. **(Remedy Drinks Australia only)** |
| **50. / 49.** | The facts and circumstances that form, in whole or in part, the basis for your allegation in your answer filed in this litigation that any Accused Mark qualifies under the well-known marks doctrine. |
| **51. / 50.** | Your corporate structure. |
| **52. / 51.** | Your Answer (Dkt. 45). |
| **53. / 52.** | Your Affirmative Defenses (Dkt. 45 at 20-38). |
| **54. / 53.** | Your Initial Disclosures. |
| **55. / 54.** | Your discovery responses, including all responses to requests for production, interrogatories, and requests for admission. |
| **56. / 55.** | The facts and circumstances concerning Your collection and production of documents in this litigation. |
| **57. / 56.** | The authenticity of Your document production in this litigation under Fed. R. Evid. 901. |
| **58. / 57.** | Documents produced by You in this litigation that constitute records of regularly conducted activity under Fed. R. Evid. 803(6). |

Again, Soulful has requested that Remedy Drinks provide *two* witnesses on all but one of these topics, one witness from each of Remedy Drinks Australia and Remedy Drinks US, even though many of Soulful's topics involve information about which only one of the two defendants could possibly have relevant knowledge. For these topics in particular, Remedy Drinks sought to narrow the burden of Soulful's facially overbroad notices by offering to provide a witness from only one entity on those topics, depending on which entity could have relevant knowledge. Soulful refused to accept this compromise and has demanded that *each* Remedy Drinks entity must prepare a 30(b)(6) witness on *each* topic, regardless of how irrelevant the topic is to that entity.[1]

Although Soulful's demands are facially abusive, Remedy Drinks has nonetheless agreed to designate a witness in response to all the noticed topics except for three particularly egregious topics—namely, that *each* Remedy Drinks entity provide a witness to testify about (1) the *entirety* of Remedy Drinks' Answer, (2) *all* of Remedy Drinks' Affirmative Defenses, and (3) *all* of Remedy Drinks' discovery responses. These are not reasonable 30(b)(6) topics. It is impossible for a party to prepare a witness to testify intelligently about the entirety of the hundreds of pages of responses Remedy Drinks has served to Soulful's unduly extensive interrogatories, requests for production, and requests for admission. To the extent that there are parts of Remedy Drinks' Answer, Affirmative Defenses, or discovery responses that relate to a substantive topic that was properly identified in Soulful's Rule 30(b)(6) notice, then a designated Remedy Drinks witness can address the topic that was identified. But Soulful has insisted that Remedy Drinks put up a witness who can answer any question about any paragraph of Remedy Drinks' answer or any objection in any response to any request for production. That is a gross violation of Soulful's obligation to "set out the matters on which each person designated will testify."

---

[1] In addition, many of the topics are unnecessarily duplicative. *See, e.g.*, *supra* Topic 25 (consumers Remedy Drinks markets to), Topic 26 (characteristics of Remedy Drinks' target consumers), Topic 27 (sophistication of Remedy Drinks consumers).

**Proposal:  Remedy Drinks requests that the Court instruct the parties that the noticed topics regarding Remedy Drinks' Answer, Affirmative Defenses, and discovery responses are not proper topics of a 30(b)(6) notice.  Alternatively, Remedy Drinks can move to quash those topics if the Court would prefer.**

### Issue #2: Format of 30(b)(6) Depositions

In addition to excessive and overbroad topics, Soulful has continued its attempts to make the 30(b)(6) process as burdensome as possible in other ways.  Unsurprisingly, several of Remedy Drinks' designated 30(b)(6) representatives are also witnesses whose depositions Soulful has noticed in their personal capacity.  For example, Soulful has noticed the deposition of Remedy Drinks Australia's co-founder Emmet Condon.  Almost a month ago, on March 8, counsel confirmed Mr. Condon's availability to be deposed on April 4, 2023.  Remedy Drinks went to great lengths to make Mr. Condon available for his deposition, including agreeing that he would appear for a deposition remotely at 6AM local time in Melbourne.  And weeks ago on March 14, Remedy Drinks Australia designated Mr. Condon as its 30(b)(6) representative for a number of the topics set out in Soulful's 30(b)(6) notice to Remedy Drinks Australia.  That same day on the parties' meet and confer call, Remedy Drinks proposed that each side take the other party's 30(b)(6) testimony at the same time as the depositions of relevant fact witnesses who have also been designated as 30(b)(6) witnesses, with the goal of limiting the disruption to each of those witness's lives.  This proposal also made sense in light of the significant overlap between the questions that would be asked of them in their personal capacities and as 30(b)(6) witnesses.  Remedy Drinks offered that proposal again on a call with Soulful's counsel on March 17, and Soulful's counsel initially agreed to combine fact and 30(b)(6) testimony, including for one its founders, Henry Kasindorf, in emails on March 20 and 21.

Then, on the eve of Mr. Condon's April 4 deposition, Soulful claimed that its examination of Mr. Condon was limited to his personal capacity, and insisted that it can depose him again in his 30(b)(6) representative capacity on another date, despite the great inconvenience Mr. Condon has already undergone.  There is no basis for the undue burden of subjecting Mr. Condon to a second, successive deposition that will likely involve overlapping or duplicative topics of questioning when Soulful already had the opportunity to depose him.

Last night, Soulful spent a full seven hours on the record questioning Mr. Condon (not including breaks and time spent addressing technical issues).  Curiously, Soulful made a conscious and strategic decision to spend much—if not most—of that time subjecting Mr. Condon to intrusive questions about wholly irrelevant subject matter, such as his personal finances, where he met his wife, his career plans for after he leaves Remedy Drinks, the names of his parents, his minor at university, and the percentage of interest he earns on a term deposit at his bank (to name just a few examples).  Soulful also felt the need to spend time attempting to intimidate Mr. Condon, by questioning him at length about subjects such as whether he had ever been arrested or convicted of a crime and whether he thinks it is important to honor a contract that has nothing to do with the dispute between Soulful and Remedy Drinks.  Even when Soulful did get around to asking Mr. Condon about his work for Remedy Drinks, Soulful apparently decided it was a better use of its limited time to repeatedly ask Mr. Condon the same question, for example, asking Mr. Condon whether he "hope[d] to make more profit for Remedy Drinks by entering the U.S. market" in virtually verbatim terms no less than six times.  Soulful's performance at Mr. Condon's deposition makes clear that their intent was never to gather facts and explore Mr. Condon's relevant knowledge, but rather to waste his time with harassing questions.

Hon. Leda Dunn Wettre, U.S.M.J.
April 5, 2023
Page 7

There is no basis for Soulful to demand that it can take full 7-hour depositions of any Remedy Drinks witness it chooses, and then also take that same witness' deposition again in a 30(b)(6) capacity. That is improper and an obvious attempt to inflict excessive burdens on Remedy Drinks and its witnesses. Now that Soulful has shown how it plans to waste the time of Remedy Drinks' witnesses and subject them to extended irrelevant and personally intrusive questioning, it is even clearer that the Court's intervention is needed.

*Proposal:* **Remedy Drinks requests that the Court impose a default limit of a single 7-hour deposition for each witness, while allowing for a party to request further time on 30(b)(6) topics if it can provide a reasonable justification for that additional time, for example, if the party needs more time to examine the witness about 30(b)(6) topics that do not overlap with the witness's testimony in their personal capacity. As to Mr. Condon in particular, the Court should instruct that Soulful is not entitled to a second deposition after having the opportunity to examine him on all 30(b)(6) topics for which he was designated.**

### Issue #3: Non-Party Investor Subpoenas

In addition to seeking excessive, disproportionate, and unduly burdensome discovery from Remedy Drinks, Soulful has also sought to impose additional undue burden on Remedy Drinks' non-party equity investors, Bennamon USA No. 1 Pty., Ltd ("Bennamon") and Catterton Management Company, LLC ("Catterton") by serving document and deposition subpoenas. These subpoenas were unjustified from the start: unlike the other non-parties in this case, which allegedly have first-hand knowledge of purported instances of confusion, Bennamon and Catterton are mere equity investors who do not operate Remedy Drinks' business, and thus have information relevant to this litigation only after receiving it from a party in the first place. Indeed, Remedy Drinks itself produced over 300 communications and documents from its own files that included Bennamon and Catterton. Unsurprisingly, these communications from Remedy Drinks to its investors comprise the vast majority of the responsive materials in these third parties' custody. Aside from a handful of additional relevant, non-privileged internal documents (which the investors have already produced), those non-party investors would not obtain information relevant to this litigation in the ordinary course. Bennamon and Catterton responded to Soulful's subpoenas by conducting a good-faith search of their records and producing all responsive, non-privileged, non-duplicative documents each non-party identified. And predictably, those non-duplicative documents had only tangential relevance to this litigation, if that. Moreover, as revealed in Mr. Condon's testimony last night, Soulful has and can question current Remedy Drinks witnesses about the communications that overlapped with these third-party investors.

In keeping with its overall strategy, Soulful insists on imposing still more unnecessary burden on these non-party investors. First, Soulful is insisting on taking depositions of both non-party investors, presumably planning to use the same intrusive approach that they employed with Mr. Condon. And Soulful is insisting that the non-party investors now serve privilege logs, even though Soulful has itself not produced a privilege log and, again, the investors' documents are largely coextensive with the same documents that Soulful has received directly from Remedy Drinks and are subject to the same privileges as well as the common interest privilege. At a minimum, the parties should first exchange their own privilege logs *before* subjecting a third party to this burden.

Soulful's demands are contrary to this Court's precedent, which "afford[s] greater protection to non-parties in discovery," requiring that "nonparty subpoenas must meet a higher standard of relevance than subpoenas directed toward parties." *Conforti v. St. Joseph's Healthcare Sys., Inc.*, 2019 WL 3847994, at *2 (D.N.J. Aug. 15, 2019). In particular, courts in this

Hon. Leda Dunn Wettre, U.S.M.J.
April 5, 2023
Page 8

district will quash a subpoena seeking a deposition of a non-party if there is no "need to further probe" the nonparty, *id.* at *6, or the plaintiff fails to "specif[y] any information that is missing or that needs to be acquired through deposition," *Kelley v. Enhanced Recovery Co.*, 2016 WL 8673055, at *2 (D.N.J. Oct. 7, 2016).  Even if the party serving the subpoena can identify some "minimal possible relevance" for the information it seeks from a non-party, courts will quash the subpoena where requiring the non-party to provide it "would not be proportional to the needs of the cases when considering the full range of interests involved." *In re EthiCare Advisors, Inc.*, 2020 WL 4670914, at *5 (D.N.J. Aug. 12, 2020).  In a letter on March 8, 2023, Bennamon and Catterton asked Soulful to "provide specific rationales why its demands are justified under the circumstances and proportional to the scope of this litigation."  **Soulful has never responded**. Because Soulful has failed to "specif[y] any information that is missing or that needs to be acquired through deposition" or otherwise, *Kelley*, 2016 WL 8673055, at *3, Soulful cannot justify imposing additional discovery burdens on either Bennamon or Catterton or taking a deposition of either non-party.

*Proposal:*  **The Court should therefore instruct the parties that non-parties Bennamon and Catterton need not provide any more information in discovery than they already have, including not sitting for depositions.  Alternatively, Bennamon and Catterton can move to modify and/or quash Soulful's subpoenas if the Court would prefer.**

### Issue #4: Former Employee Subpoenas

Soulful has also served subpoenas on former Remedy Drinks US employees, Daniel Bookman and Dan Leja, seeking depositions from those former employees personally.  Because these individuals are no longer employed by Remedy Drinks, they are outside of Remedy Drinks' control.  Now that Soulful has served these individuals separately, however, counsel for Remedy Drinks have been discussing whether they will represent Mr. Bookman and Mr. Leja with respect to the personal subpoenas Soulful served on them.  Counsel for Remedy Drinks have already communicated to Soulful our view that burdening these former employees is not necessary—in large part because (1) Remedy Drinks has already produced hundreds of emails and documents that were in Mr. Bookman and Mr. Leja's Remedy Drinks records (such as emails preserved in their email accounts), (2) non-party investor Bennamon also produced dozens of emails and documents related to Mr. Bookman that were not included in Remedy Drinks' productions, and (3) Soulful will have the opportunity to depose the most senior executives and longest-serving employees at both Remedy Drinks Australia and Remedy Drinks US about these subjects.  But Mr. Bookman and Mr. Leja have only agreed to representation by defendant's counsel in their personal capacity very recently.  We expect to meet and confer about this issue with Soulful further.  We will apprise the Court if its intervention is required.

*Proposal:*  **At this time, no action is required by the Court until counsel for the parties have met and conferred about the subpoenas to Mr. Bookman and Mr. Leja further.**

\*     \*     \*

As it becomes increasingly clear that Soulful's claims of confusion ring hollow, it has become increasingly desperate to impose as much of a burden as possible on anyone connected to the Defendants in this case.  The Court should intervene to prevent such abusive tactics and ensure that discovery remain proportional to the needs of the case.

As always, we thank the Court for its time and attention.  We remain available to address any questions Your Honor or Your Honor's staff may have.

Hon. Leda Dunn Wettre, U.S.M.J.
April 5, 2023
Page 9

                                                   Respectfully submitted,

                                                   *s/ Liza M. Walsh*

                                                   Liza M. Walsh

cc: Counsel of Record (via ECF and Email)